Kenneth R. BURKHARDT,
Claimant–Appellant,

v.

Hershel W. GOBER, Acting Secretary
of Veterans Affairs, Respondent–
Appellee.

No. 99–7034.

United States Court of Appeals,
Federal Circuit.

Nov. 16, 2000

Rehearing Denied Jan. 9, 2001.

designation.

Robert V. Chisholm, Chisholm Chisholm & Kilpatrick, of Providence, Rhode Island, argued for claimant-appellant.

R. Alan Miller, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director.

Before MICHEL, LOURIE, and LINN, Circuit Judges.

LINN, Circuit Judge.

Kenneth R. Burkhardt seeks review of the final decision of the United States Court of Veterans Appeals [1] holding that it did not have jurisdiction over an application for costs and fees, submitted under the Equal Access to Justice Act ("EAJA"). *See Burkhardt v. West*, No. 96–721, 1998 WL 831421 (Vet.App. Nov. 9, 1998). Because the Court of Appeals for Veterans Claims properly dismissed Burkhardt's EAJA application for lack of jurisdiction, we affirm.

## BACKGROUND

Burkhardt served in the military until March 1946 and had a variety of medical problems. A regional office ("RO"), assessing those medical problems, issued two rating decisions, one in April 1946 and the other in June 1946. Burkhardt was not

---

1. On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 122 Stat. 3315, 3341. We refer to the court by its new name throughout the remainder of this opinion.

satisfied with either of the rating decisions and challenged them at the Board of Veterans Appeals ("BVA"), alleging clear and unmistakable error ("CUE"). The BVA issued a decision on May 9, 1996 stating that the preponderance of the evidence did not support a finding of CUE in either of the rating decisions. Burkhardt appealed the BVA's decision to the Court of Appeals for Veterans Claims. That court issued a decision on November 19, 1997 affirming the finding of no CUE in the April 1946 rating decision, and dismissing the appeal regarding CUE in the June 1946 rating decision for lack of jurisdiction.

Regarding its jurisdiction, the Court of Appeals for Veterans Claims explained that the June 1946 rating decision could not be final until notice was sent to Burkhardt informing him of the decision, citing 38 U.S.C. § 5104(a) and 38 C.F.R. § 3.104(a). The court then noted that the BVA had found that Burkhardt had not been informed of the June 1946 decision. Accordingly, the court concluded that the claim corresponding to that decision was still pending before the RO and, therefore, that the court had no jurisdiction to review it.

Burkhardt did not appeal the Court of Appeals for Veterans Claims' decision, allowing the appeal period to expire. He did, however, file an application with that court under the EAJA for attorney fees and expenses related to his appeal of the BVA's decision regarding the June 1946 rating decision. The court assessed, as it must, its jurisdiction over Burkhardt's EAJA application. The court interpreted the EAJA to require that, in order to have jurisdiction over the EAJA application, the court must have had jurisdiction over the action giving rise to the expenses. Because the court had determined that it had no jurisdiction over the appeal involving the June 1946 rating decision, the court dismissed the EAJA application for lack of jurisdiction. The court relied on its precedent in *Heath v. West,* 11 Vet.App. 400 (1998), *aff'd,* 215 F.3d 1342 (Fed.Cir.1999) (unpublished table decision), for its interpretation of the EAJA jurisdictional requirement.[2]

Burkhardt appeals to this court the Court of Appeals for Veterans Claims' dismissal of his EAJA application.

## DISCUSSION

### A. Jurisdiction and Standard of Review

■ The Secretary of Veterans Affairs ("VA") raises the threshold question of this court's jurisdiction to review the Court of Appeals for Veterans Claims' dismissal of the EAJA application. Our jurisdiction is established by statute which states that this court "shall decide all relevant questions of law, including interpreting ... statutory provisions." 38 U.S.C. § 7292(d)(1) (1994). The VA asserts that this court does not have jurisdiction because the Court of Appeals for Veterans Claims merely interpreted and applied its own precedent, as set forth in *Heath,* and did not perform any statutory interpretation. Burkhardt argues, to the contrary, that the Court of Appeals for Veterans

---

2. In *Heath,* the applicant sought fees for an action in which he petitioned the Court of Appeals for Veterans Claims to issue a writ of mandamus ordering the Secretary of Veterans Affairs to pay him a certain sum of money. *See Heath,* 11 Vet.App. at 401. In its decision on the fee request, the Court of Appeals for Veterans Claims noted that it was not authorized to grant the writ ordering the Secretary to pay the money, although it could have ordered the Secretary to adjudicate the veteran's claim. *See id.* at 402. Because Heath had requested action that the court was not authorized to provide, the court concluded that it had never had jurisdiction to grant the relief requested by Heath's petition. *See id.* The court determined that because it had never had jurisdiction over the underlying action it also lacked jurisdiction under the EAJA for the related fee request. *See id.* at 404.

Claims interpreted the EAJA and that this court, therefore, does have jurisdiction.

The EAJA provides, in part, that:

[A] court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court *having jurisdiction of that action*, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1994) (emphasis added). It is clear that the Court of Appeals for Veterans Claims interpreted, either directly or through the vehicle of its precedent, the EAJA language "having jurisdiction of that action" to require that the court must have had jurisdiction of the underlying civil action. The VA's position, that the court did not interpret this language, is not credible. The VA, in effect, implies that this court can only review Court of Appeals for Veterans Claims statutory interpretation when it is a case of first impression with the Court of Appeals for Veterans Claims, and that the Court of Appeals for Veterans Claims' reliance on its own precedent precludes our review. The statute mandating our review of Court of Appeals for Veterans Claims decisions prohibits such a result, providing in part that this court *"shall* decide all relevant questions of law, including interpreting ... statutory provisions." 38 U.S.C. § 7292(d)(1) (1994) (emphasis added). We therefore have jurisdiction and address the merits of the Court of Appeals for Veterans Claims' EAJA interpretation. Our review is de novo. *Jones v. Brown,* 41 F.3d 634, 637 (Fed.Cir.1994).

B.   Interpretation of the EAJA

To interpret a statute, "we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Toibb v. Radloff,* 501 U.S.

157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *see also Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal quotations omitted); *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter.") (internal quotations omitted); *Music Square Church v. United States,* 218 F.3d 1367, 1370 (Fed.Cir.2000).

■   Thus, we begin our analysis by considering the language of the EAJA. Burkhardt argues that the EAJA language "having jurisdiction of that action" can be satisfied even if the Court of Appeals for Veterans Claims properly dismisses "that action" for lack of jurisdiction. To support this argument, Burkhardt cites *United States v. 87 Skyline Terrace,* 26 F.3d 923 (9th Cir.1994), for the proposition that a court may have potential jurisdiction even though it lacks actual jurisdiction. Burkhardt urges this court to adopt the Ninth Circuit's distinction, and to interpret the EAJA to require only that a court have potential jurisdiction of the underlying action. Burkhardt further contends that the Court of Appeals for Veterans Claims did have potential jurisdiction of his appeal of the finding of no CUE in the June 1946 rating decision, even though the court lacked actual jurisdiction. Based upon this potential jurisdiction, the EAJA requirement would then have been met and the court would have had jurisdiction over Burkhardt's EAJA application. The VA rejects Burkhardt's interpretation and responds that the Court of Appeals for Vet-

erans Claims correctly applied, and properly relied on, its own precedent set forth in *Heath*.

■ We hold that the EAJA language in question, "having jurisdiction of that action," is plain, clear, and unambiguous. The words "that action" clearly refer to the preceding language in the EAJA reciting the "civil action ... brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A) (1994). The words "having jurisdiction" can, admittedly, take on different meanings in different contexts. In the present case, the context is that of requiring a court to have jurisdiction over an action. Given this context, there can be no question that the proper meaning is the customary one requiring that the court, the Court of Appeals for Veterans Claims in this case, have the power to hear and decide the action. *See, e.g.,* Black's Law Dictionary 852 (6th ed.1990) (offering the following definition, among others, of jurisdiction: "[i]t is the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties"). Accordingly, we interpret the EAJA to extend only to fees and other expenses incurred before a court, the Court of Appeals for Veterans Claims in this case, having the power to hear and decide the underlying civil action in which the EAJA applicant incurred those fees and other expenses.

Our interpretation of the language "having jurisdiction of that action" follows not only the plain and unambiguous meaning of those words but also renders the overall statutory scheme "coherent and consistent." *Robinson,* 519 U.S. at 340, 117 S.Ct. 843. As the earlier-quoted portion of the EAJA reveals, the EAJA contains two additional requirements. These are: (1) that the party applying for fees and expenses prevailed; and (2) that the position of the United States was not substantially

justified. It would make little sense to ask a court to inquire into whether a party prevailed, or, alternatively, was substantially justified, with regard to an action that that court had no power to hear and decide in the first place. Accordingly, we reject Burkhardt's suggestion that the Congress intended something less than the ordinary meaning of "jurisdiction," and we decline his invitation to adopt, in this case, the distinction drawn by the Ninth Circuit between actual jurisdiction and potential jurisdiction.

Our decision in *Johns–Manville Corp. v. United States,* 893 F.2d 324 (Fed.Cir. 1989), is instructive and further supports our decision in this case. In *Johns–Manville,* the Claims Court awarded the United States fees under an earlier version of the EAJA that provided for the award of fees and expenses to the prevailing party in any civil action brought in any court "having jurisdiction of *such* action." *Id.* at 328 (citing 28 U.S.C. § 2412(a) (1982)) (emphasis added). The operative language in the present case is functionally identical to that in *Johns–Manville,* varying only in the substitution of the word "that" for "such."

The relevant facts of *Johns–Manville* are as follows. Johns–Manville Corp. and Johns–Manville Sales Corp. (collectively "Manville") filed three actions against the United States in the Claims Court. *Id.* at 325. Manville had previously filed similar civil actions in district courts in two separate states, and a statute provided that these earlier filings precluded the Claims Court from having jurisdiction over the cases filed at the Claims Court. *Id.* (citing 28 U.S.C. § 1500 (1982)). The Claims Court, therefore, determined that it lacked jurisdiction and eventually dismissed Manville's three claims despite there having been several years of discovery and pretrial proceedings. *Id.* at 325–26. The Claims Court also subsequently awarded costs to the United States, and Manville

appealed that award to this court. *Id.* at 326.

In *Johns–Manville*, this court addressed the power of the Claims Court to award costs under the EAJA and concluded that "[b]ecause the Claims Court did not have jurisdiction over the civil actions brought by Manville in this case, section 2412(a) is inapplicable and does not empower the Claims Court to award costs." *Id.* at 328. Thus, in *Johns–Manville* this court interpreted the EAJA language "having jurisdiction of such action" to require the court, the Claims Court in that case, to have had jurisdiction over, i.e., the power to hear and decide, the case giving rise to the costs.

Given the functional identity of the language involved, the reasoning of *Johns–Manville* applies to the present case. The Court of Appeals for Veterans Claims, like the Claims Court in *Johns–Manville*, determined that it did not have jurisdiction over the claim that gave rise to the contested fees and expenses. That claim was Burkhardt's appeal to the Court of Appeals for Veterans Claims of the BVA's decision regarding the June 1946 rating decision.[3] Thus, under the *Johns–Manville* reasoning, the Court of Appeals for Veterans Claims was correct in interpreting the language of the EAJA to preclude the Court of Appeals for Veterans Claims from awarding Burkhardt the fees incurred in that claim.[4]

### C. Prevailing Party Under the EAJA

Burkhardt also argues that he is a prevailing party, maintaining that he pre-

vailed on the merits, or alternatively, that he prevailed under what is known as the catalyst theory. Because of our disposition of the present case, we need not and do not address these arguments.[5]

## CONCLUSION

We interpret the EAJA language "having jurisdiction of that action" to limit the reach of the EAJA to extend only to fees and other expenses incurred before a court having the power to hear and decide the underlying civil action giving rise to the fees and other expenses that are the subject of the EAJA application. The Court of Appeals for Veterans Claims made a final determination, not the subject of this appeal, that it lacked such power over Burkhardt's appeal relating to the June 1946 rating decision. Accordingly, we affirm the Court of Appeals for Veterans Claims' decision that it lacked jurisdiction over Burkhardt's EAJA application for fees and other expenses incurred in connection with that appeal.

*AFFIRMED*

---

**3.** The Court of Appeals for Veterans Claims' decision that it lacked jurisdiction over Burkhardt's appeal of the BVA's finding of no CUE in the June 1946 rating decision is final because Burkhardt did not appeal it.

**4.** In *Johns–Manville*, this court reversed the Claims Court's award of costs, which indicates that the Claims Court's proper response to a fee request may be to deny it. In the present case, instead of denying the fee request, the Court of Appeals for Veterans Claims dismissed it for lack of jurisdiction.

This difference, however, is concerned with the particular limitations on the Court of Appeals for Veterans Claims' jurisdiction and does not impact any interpretation of the EAJA.

**5.** We express our doubt, however, that Burkhardt can be said to have prevailed, under any theory, on a claim that was dismissed for lack of jurisdiction.