Walter C. HUDSON, Claimant–
Appellant,

v.

Anthony J. PRINCIPI, Secretary of
Veterans Affairs, Respondent–
Appellee.

No. 00–7141.

United States Court of Appeals,
Federal Circuit.

Aug. 15, 2001.

Michael E. Wildhaber, The Law Office of Wildhaber & Associates, of Washington, DC, argued for petitioner.

Paul Hoburg, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC. Of counsel were Jan M. Folena, and John J. Field, Attorneys, Department of Justice, of Washington, DC.

Before NEWMAN, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Walter C. Hudson ("appellant") seeks review of the final decision of the United States Court of Appeals for Veterans Claims [1] dismissing his application for an

award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1994). We hold that the Court of Appeals for Veterans Claims erred in dismissing his EAJA claim, vacate the decision of the Court of Appeals for Veterans Claims in *Hudson v. West,* 13 Vet.App. 470 (2000), and remand to the court for consideration of Mr. Hudson's EAJA application.

## BACKGROUND

Mr. Hudson served on active duty in the United States Air Force from January 1948 to July 1949. He suffered from a variety of medical conditions, including a duodenal ulcer, while in the service. In July 1949 he received a certificate of disability for discharge due to his ulcer. He later was diagnosed by the Department of Veterans Affairs as having both ulcers and a mental disorder. In October 1992 Mr. Hudson filed a claim with the Department of Veterans Affairs for service connection for paranoid schizophrenia.

The Regional Office of the Department of Veterans Affairs informed Mr. Hudson by letter dated March 5, 1993, that his claim for service connection was denied. In a letter dated March 12, 1993, Mr. Hudson submitted a Notice of Disagreement ("NOD") with this decision. In November 1993 the Regional Office determined that Mr. Hudson had submitted new and material evidence to reopen his claim but denied service connection for paranoid schizophrenia, on both a direct basis and as secondary to the service-connected ulcer. The Regional Office stated: "Since this action has reopened the claim, no further action is taken on the Notice of Disagreement filed 3–22–93 because it is con-

---

1. On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enact-

ment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 122 Stat. 3315, 3341. We refer to the court by its new name throughout the opinion.

sidered favorably resolved." The Regional Office, however, failed to prepare or issue a Statement of the Case ("SOC") to Mr. Hudson as required by 38 U.S.C. § 7105(d)(1).

In December 1994 Mr. Hudson filed a Notice of Disagreement seeking to appeal the decision of the Department of Veterans Affairs to take no further action on the March 1993 Notice of Disagreement. After several rejections and another Notice of Disagreement, Mr. Hudson appealed to the Board of Veterans' Appeals ("Board").

On May 9, 1997, the Board determined that the November 1993 Department of Veterans Affairs decision had been final, and that Mr. Hudson had failed to file a timely appeal from that decision. The Board therefore considered whether Mr. Hudson had submitted new and material evidence after November 1993 sufficient to reopen his claim. *See* 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary [of Veterans Affairs] shall reopen the claim and review the former disposition of the claim."). The Board found the evidence to be cumulative and not material, and therefore denied Mr. Hudson's application to reopen his claim for service connection for paranoid schizophrenia.

■ Mr. Hudson appealed to the Court of Appeals for Veterans Claims, raising for the first time the issue as to whether the Department of Veterans Affairs' failure to prepare a Statement of the Case rendered the 1993 decision non-final. After the Board decision but before the Court of Appeals for Veterans Claims' opinion in this case, this court held in *Hodge v. West*, 155 F.3d 1356, 1361 (Fed.Cir.1998), that the definition of new and material evidence set forth in 38 C.F.R. § 3.156(a) must be applied in determining whether a veteran has submitted new and material evidence, thereby expressly overruling *Colvin v.*

*Derwinski*, 1 Vet.App. 171 (1991). The effect of *Hodge v. West* is that it is no longer necessary for a veteran to prove that there is a réasonable possibility that the new evidence would change the outcome. 155 F.3d at 1360. Instead, after *Hodge v. West*, a veteran need only present evidence "which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim," consistent with 38 C.F.R. § 3.156(a). *Id.* at 1359.

In a July 20, 1999, opinion, the Court of Appeals for Veterans Claims noted that "[t]he Secretary concedes in his brief that the Board's decision must be vacated and the matter remanded to the Board to determine whether or not the evidence submitted by the appellant was new and material under the definition promulgated by the Federal Circuit" in *Hodge v. West*. *Hudson v. West*, No. 97–1220, 1999 WL 554228, at *3 (Vet.App. July 20, 1999) (unpublished disposition). The court further stated that the Secretary "concedes that the Board committed an additional error by failing to ensure that the [Regional Office] issue a SOC after the November 1993 [Regional Office] decision." *Id.* The court therefore concluded that the November 1993 decision did not become final, stating:

The Board erred by failing to adjudicate [appellant's] appeal. This error was material because the Board only considered the evidence submitted since the November 1993 decision.

In summary, because the [Regional Office] failed to issue a SOC following the November 1993 [Regional Office] decision, this decision did not become final. The appellant's time to file a NOD was tolled by the failure of the [Regional Office] to issue an SOC. The appellant's December 1994 NOD was timely filed.

This appeal is currently in appellate status before the Board. Although the Court will dismiss his appeal for lack of jurisdiction, the Board is required by statute to adjudicate the merits of the appellant's claim, considering all of the evidence submitted since the December 1976 [Regional Office] decision to determine if the appellant has furnished new and material evidence to reopen his claim. If the Board decides that the appellant has submitted new and material evidence to reopen his claim, the Board will then proceed to adjudicate his claim on the merits by first determining whether the appellant has submitted a well-grounded claim.

*Id.* (internal citations omitted). The court thus instructed the Board to adjudicate the merits of Mr. Hudson's claim, considering all of the evidence submitted since December 1976 to determine if Mr. Hudson has furnished new and material evidence under the correct standard. The court nonetheless dismissed the appeal, finding that "[i]n *Tablazon v. Brown,* 8 Vet.App. 359 (1995), [the Court of Appeals for Veterans Claims] held that when [the] 'VA has failed to procedurally comply with statutorily mandated requirements, a claim does not become final for purposes of appeal to the [Court of Appeals for Veterans Claims].'" *Id.*

■ On October 21, 1999, Mr. Hudson filed an EAJA application at the Court of Appeals for Veterans Claims for an award of attorneys' fees and expenses. Mr. Hudson asserted that he was the "prevailing party" within the meaning of 28 U.S.C. § 2412(d) because the July 20, 1999, decision, although dismissing the appeal for lack of jurisdiction, remanded to the Board with instructions to adjudicate the merits of Mr. Hudson's claim.[2] The Secretary of Veterans Affairs asserted that in order for the Court of Appeals for Veterans Claims to award EAJA fees, the Court of Appeals for Veterans Claims must have had jurisdiction over the underlying action. The Secretary urged that because the Court of Appeals for Veterans Claims found that it did not have jurisdiction over the May 1997 Board decision and dismissed the appeal, the court was also required to dismiss Mr. Hudson's EAJA application for lack of jurisdiction.

In the decision now on appeal, the Court of Appeals for Veterans Claims held that it could not "award EAJA fees unless it had jurisdiction to award the relief requested during the merits litigation," citing *Heath v. West,* 11 Vet.App. 400, 403 (1998). *Hudson v. West,* 13 Vet.App. at 471. The court concluded that "since it did not have actual jurisdiction over the appeal of the May 1997 Board decision, the underlying action in this EAJA application, the Court does not have jurisdiction to consider the EAJA application itself." *Id.* at 472. The court accordingly dismissed Mr. Hudson's application for attorneys' fees and expenses under EAJA. Judge Steinberg filed a concurring opinion stating that the court's July 1999 opinion was incorrect in relying

---

**2.** We note that Mr. Hudson also argues that he should be awarded fees under EAJA based on the "catalyst theory." Under the "catalyst theory," "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 531 U.S. 1004, 121 S.Ct. 1835, 1838, 149 L.Ed.2d 855 (2001). In *Buckhannon,* the Court held that the "catalyst theory" is not a permissible basis for awarding attorneys' fees under two similar statutes: the Fair Housing Amendments Act of 1988, 102 Stat. 1619, 42 U.S.C. § 3601 *et seq.,* and the Americans with Disabilities Act of 1990, 104 Stat. 327, 42 U.S.C. § 12101 *et seq.* Even assuming that the same rule applies to EAJA, we note that Mr. Hudson's claim is not, in fact, a catalyst claim but a claim based on his allegedly being the prevailing party.

on *Tablazon v. Brown*, 8 Vet.App. 359 (1995), where the court had dismissed a claim for lack of jurisdiction because the Notice of Disagreement was filed before November 18, 1988, the effective date of the Veterans' Judicial Review Act. *Id.* at 474–75. Judge Steinberg noted that Mr. Hudson's case should have instead been based on cases dealing with post-November 18, 1988, Notices of Disagreement that consistently remanded if a SOC had not yet been issued. *Id.* at 475. Judge Steinberg agreed however that the court was constrained to refuse to reconsider the jurisdictional issue and to dismiss the EAJA application based on the binding precedent of *Heath v. West* cited in the majority opinion. *Id.* at 472. This timely appeal followed.

## DISCUSSION

### I. *Standard of Review*

■■■ The Court of Appeals for Veterans Claims' construction of a statute, such as EAJA, is reviewed without deference. *Abbs v. Principi*, 237 F.3d 1342, 1344–45 (Fed.Cir.2001). A determination of the jurisdiction of the Court of Appeals for Veterans Claims is a question of law that is also reviewed without deference. *Maggitt v. West*, 202 F.3d 1370, 1374 (Fed.Cir. 2000). We have jurisdiction of this appeal under 38 U.S.C. § 7292(a).

### II. *Analysis*

■■■ On this appeal the parties agree that Mr. Hudson would satisfy the statutory requirements for an award of attorney's fees since he secured relief during the merits phase of the case and the government's position was not substantially justified, but for the Court of Appeals for Veterans Claims' decision in July 1999 that it lacked jurisdiction over Mr. Hudson's original appeal. The question presented by this case is whether an improper dismissal for lack of jurisdiction during the

merits phase of a case can be reexamined in the course of an attorneys' fees proceeding under EAJA.

■■■ It is clear that the Court of Appeals for Veterans Claims' jurisdictional holding was erroneous, as the government conceded here at oral argument. It is well-established by the Court of Appeals for Veterans Claims that the proper remedy for a failure by the Department of Veterans Affairs to issue and provide a Statement of the Case is to remand to the Board, not to dismiss for lack of jurisdiction. In *Fenderson v. West*, 12 Vet.App. 119 (1999), the Court of Appeals for Veterans Claims summarized this practice, stating that:

> [W]e are presented here with a timely NOD as to this claim but regarding which the [Regional Office] has never responded by issuing an SOC as required by law and regulation. The remedy for such a situation is controlled by our opinion in *Holland v. Gober*, 10 Vet. App. 433, 436 (1997) (per curiam order) (vacating BVA decision and remanding matter when VA failed to issue SOC after claimant submitted timely NOD), and the Court will thus vacate the BVA decision as to this matter and remand to the Board for appropriate procedural compliance, specifically the issue of an SOC.

*Id.* at 132 (internal citations omitted).

Moreover, although the Court of Appeals for Veterans Claims' July 20, 1999, opinion concluded that the appeal was dismissed for lack of jurisdiction, it did not function as a dismissal at all. Instead, the opinion was effectively a remand, stating that "the Board is required by statute to adjudicate the merits of the appellant's claim, considering all of the evidence submitted since the December 1976 [Department of Veterans Affairs Regional Office] decision to determine if the appellant has

furnished new and material evidence to reopen his claim." *Hudson v. West,* 1999 WL 554228, at *3. Both parties agree that the case was effectively remanded to the Board for adjudication on the merits.

■ The Court of Appeals for Veterans Claims, however, denied relief because it interpreted the EAJA statute, 28 U.S.C. § 2412(d)(1)(A), to prohibit an award of EAJA fees unless it had jurisdiction to award the relief requested during the merits litigation. That subsection of the EAJA statute provides in pertinent part that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., brought by or against the United States *in any court having jurisdiction of that action,* unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). This court and others have established that there cannot be an award of attorneys' fees unless the court has jurisdiction of the action. *See, e.g., Burkhardt v. Gober,* 232 F.3d 1363, 1368 (Fed.Cir. 2000) (requiring court to have jurisdiction in order to award costs under EAJA); *W.G. v. Senatore,* 18 F.3d 60, 64 (2d Cir. 1994) ("Where there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law 'that lack of jurisdiction bars an award of attorneys fees under [42 U.S.C. § ] 1988.' ") (internal brackets omitted); *United States v. 87 Skyline Terrace,* 26 F.3d 923, 927 n. 6 (9th Cir.1994) (listing cases holding that "subject matter jurisdiction is a condition precedent to an award of fees under the EAJA"); *Clark v. Busey,* 959 F.2d 808, 810

(9th Cir.1992) ("Subject matter jurisdiction to decide the merits of the underlying action is a condition precedent to an award of fees or costs under the EAJA.") (internal quotations omitted); *Johns–Manville Corp. v. United States,* 893 F.2d 324, 328 (Fed.Cir.1989) (finding a lack of subject matter jurisdiction barred an EAJA award where plaintiff improperly filed suit in the Claims Court); *Lane v. United States,* 727 F.2d 18, 20–21 (1st Cir.) (finding a lack of subject matter jurisdiction barred an EAJA award where plaintiff improperly filed suit in the district court), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 57 (1984). But none of these cases involved a claim that the original jurisdiction decision was erroneous. Therefore, the case before us is one of first impression.

■ The government urges that even though the Court of Appeals for Veterans Claims erred in ordering the case "dismissed for lack of jurisdiction" in the July 20, 1999, decision, that order automatically precludes an award of attorneys' fees, because the July 20, 1999, decision is now law of the case. Although we agree that jurisdictional holdings may be law of the case in later attorneys' fees litigation,[3] this argument is unpersuasive.

■ It is well-accepted that the application of the law of the case doctrine is discretionary. *See, e.g., Intergraph Corp. v. Intel Corp.,* 253 F.3d 695, 698 (Fed.Cir. 2001); *Free v. Abbott Labs., Inc.,* 164 F.3d 270, 272 (5th Cir.1999). It is also well-established that the law of the case doctrine is a rule of practice and not a limit on a court's power, *see, e.g.,* 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.21[1], at 134–46 (3d ed.1999), and that "law of the case should not be applied woodenly in a way inconsistent with sub-

---

3. *W.G. v. Senatore,* 18 F.3d at 63; *see also LaShawn A. v. Barry,* 87 F.3d 1389, 1394 (D.C.Cir.1996) ("[T]his court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction....").

stantial justice," *United States v. Miller*, 822 F.2d 828, 832 (9th Cir.1987).

■ Courts have articulated several circumstances where the law of the case doctrine does not apply. One basis upon which the courts will revisit a previously settled issue is when the previous decision was "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)); *United States v. Becerra*, 155 F.3d 740, 752–53 (5th Cir.1998); *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir. 1996). For example, in *Evans v. City of Chicago*, 873 F.2d 1007, 1016 (7th Cir. 1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990), the Seventh Circuit found that law of the case should not be applied because its earlier ruling was clearly erroneous. Likewise, in *United States v. Miller*, 822 F.2d at 832–33, the Ninth Circuit allowed a district court to reconsider an issue that would normally be law of the case on remand. The court held that its previous ruling on a prior appeal rested on a government concession that was mistaken and that failure to reconsider the issue would result in manifest injustice. *Id.* at 833. Similarly, in *Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills*, 141 F.3d 1284 (8th Cir.1998), the Eighth Circuit held that the law of the case doctrine did not prevent the district court from reconsidering a Fed.R.Civ.P. 59(e) motion, and noted that "[i]n any event, a court has the power to revisit its prior decisions when the initial decision was clearly erroneous and would work a manifest injustice." *Id.* at 1288 (internal quotations omitted).

This is certainly the situation here. The dismissal for lack of jurisdiction was admittedly erroneous for the reasons previously discussed. A decision to foreclose the award of EAJA fees in any case where the Court of Appeals for Veterans Claims erroneously dismisses "for lack of jurisdiction," although the appellant prevails, would result in a manifest injustice.

The government suggests that there is no manifest injustice here because Mr. Hudson could have appealed the earlier dismissal for want of jurisdiction. It would have been quite strange for Mr. Hudson to appeal the grant of the very holding that he had requested. Such an appeal when the party has received the desired result, would arguably border on frivolous. We therefore find unpersuasive the government's argument that Mr. Hudson should have appealed the decision.

We hold that law of the case does not apply and that the Court of Appeals for Veterans Claims' finding of lack of jurisdiction is not law of the case. Accordingly, we conclude that the Department of Veterans Affairs misinterpreted the EAJA statute by disregarding the limitations on the law of the case doctrine.

## CONCLUSION

For the foregoing reasons, we hold that the Court of Appeals for Veterans Claims erred in refusing to consider the EAJA application, and accordingly vacate the decision on appeal and remand to the Court of Appeals for Veterans Claims for proceedings consistent with this opinion.

*VACATED AND REMANDED.*

## COSTS

No costs.